UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>DARRYL K. WILLIAMS,<br>    Defendant. | CRIMINAL NO. 7:16-15-KKC-EBA-1<br><br><br>**OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

Williams was indicted and charged, alongside three co-defendants, with one count of conspiracy to distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. Magistrate Judge Edward Atkins determined that Williams should be detained pending trial because no condition or set of conditions would reasonably assure the safety of the community if he were released. (DE 29). Williams now moves this Court under 18 U.S.C. § 3145(b) to reconsider that detention order. For the following reasons, Williams' motion to reconsider (DE 32; 42) will be **DENIED**.

## BACKGROUND

On November 17, 2016, a federal grand jury returned a one-count indictment against Williams charging him with conspiracy to distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. (DE 1). The alleged conspiracy occurred between June 2015 and July 12, 2016 in Knott County, Kentucky, and elsewhere. (DE 1). An arrest warrant was issued for Williams on the same day. (DE 6). Williams voluntarily surrendered to authorities. Williams made his initial appearance on November 30, 2016, where he pleaded not guilty to the single charge. (DE 10). He was remanded to the custody of the U.S. Marshal pending a detention hearing. (DE 10).

On December 2, 2016, Williams appeared before Magistrate Judge Atkins for a detention hearing. (DE 28). Both the United States and Williams presented argument regarding whether Williams should be detained pending his trial. Williams presented no witnesses, but argued that pre-trial home incarceration was appropriate in his case. He

1

argued that he had minimal history—notwithstanding a previous conviction for tax evasion—and added that he is unemployed and receiving SSI disability benefits because he suffers from a litany of medical problems so severe that they require him to have an oxygen tank with him at all times.

The United States then presented argument. First, it conceded that Williams presented enough evidence to overcome the presumption of detention regarding risk of flight. Instead, the United States argued that Williams had not rebutted the presumption as it relates to community safety. To make that latter point, the United States relied on the testimony of Detective Brian Metzger, an officer at the London City Police Department assigned to the Drug Enforcement Administration as a Task Force Officer. Detective Metzger participated in the investigation of Williams. He testified that in June 2016 officers learned that Williams organized an effort to fill and acquire Oxycodone prescriptions. According to Detective Metzger, Williams would send various people on trips to Virginia to meet with a particular doctor and have them fill the prescriptions for Williams, who would then sell the pills. Detective Metzger also noted that this plan did not require Williams himself to travel to Virginia, but that he sent trusted individuals to the doctor or would use Walmart money orders to send prescription payments. Detective Metzger also testified that Williams did willingly speak with law enforcement on several occasions during the investigation. At the close of the hearing, Magistrate Judge Atkins took the matter under advisement.

On December 5, 2016, Magistrate Judge Atkins issued his Detention Order (DE 29) finding that no set of release conditions could reasonably ensure the safety of the community. Judge Atkins ordered that Williams be detained pending trial.

On December 19, 2016, Williams filed a motion to reconsider his pre-trial detention (DE 32) arguing that home incarceration would be sufficient to assure "the community that no criminal activity could occur." (DE 32, at 2). In support, Williams stressed that "[t]here is no allegation that any drug trafficking activities occurred after [July 12, 2016]," and argued that "[s]ince it is now some five months after the Government believes the Defendant engaged in any drug trafficking, it is inconsistent to also state the Government fears the Defendant will continue in drug trafficking activity if released." (DE 32, at 2). Judge Atkins ordered the government to file any response to Williams' motion for reconsideration by December 28, 2016, (DE 33), but no response was ever filed.

Judge Atkins then scheduled the matter for a hearing on January 5, 2017, the Court to determine whether Williams was seeking to reopen the previous detention hearing under § 3142(f), or was seeking a review of the detention order pending trial under § 3145.

At the hearing, the United States reiterated its previous position that pre-trial detention was appropriate and noted that there was no basis for the Court to reconsider its previous position because Williams presented no new evidence since the December 2, 2016 detention hearing. Williams made clear that he sought a review of the detention order under 18 U.S.C. § 3145. As ground for this reconsideration, Williams emphasized that his medical problems had worsened to the point of him having to be hospitalized.

Judge Atkins determined that, because Williams did not seek to reopen the detention hearing and instead sought review under 18 U.S.C. § 3145(b), the District Court was the proper court to consider Williams' motion.

In response to that order, Williams filed a motion directed to this Court asking for review of Judge Atkins' original pre-trial detention order. For support, Williams largely relied on the same reasoning—that it would be "inconsistent for the government to argue that the Defendant will continue in drug trafficking activity if released when there is no suspicion of any drug activity after the period contained in the indictment"—espoused in his earlier motion. Williams did add, though, that if released, an accommodation could be made to send Williams home to his father and not to the same residence where he allegedly committed the acts in the indictment. The United States responded to the motion, maintaining its previous position that Williams should remain in custody pending his trial in February.

Before conducting its review of Judge Atkins' detention order, this Court ordered Williams to file evidence of his medical condition into the record to better evaluate the proffers made by Williams. (DE 43).

With the record now supplemented (DE 45), the Court will evaluate Williams' motions. (DE 32; 42).

## DISCUSSION

Under 18 U.S.C. § 3145(b), if a person is ordered detained by a magistrate judge, the defendant may make a motion for revocation or amendment to the court having original jurisdiction and that motion "shall be determined promptly." A magistrate judge's detention order is reviewed *de novo*. *United States v. Watkins*, No. 13-CV-02-KSF, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (noting that while 18 U.S.C. § 3145 does not set out a standard of

3

review, "most district courts in the Sixth Circuit have applied the *de novo* standard of review"); *United States v. McGowan*, No. 5:13-123-KKC, 2013 WL 5743912, at *1 (E.D. Ky. Oct. 23, 2013) (citing *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992)).

The Bail Reform Act, 18 U.S.C. § 3142, governs the release or detention of a defendant pending trial. A judicial officer must order a defendant detained if no condition will reasonably assure his or her appearance at trial or if there is a serious risk to the safety of any other person or the community. 18 U.S.C. § 3142(e). A court, however, must consider all reasonable, less restrictive alternatives to detention. *Id*. A finding that no conditions will reasonably assure the safety of another person or the community must be supported by clear and convincing evidence. *Id*. § 3142(f). The Court must consider the following factors in determining whether to release a defendant or order that he be held in custody:

> (1) the nature and circumstance of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including:
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and;
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id*. § 3142(g). In a case where the defendant is charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq*.)," it is presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). This presumption imposes only a "burden of production" on the defendant, requiring that the defendant produce "some evidence" that he does not pose a danger to the community or a risk of flight. *See United States v. Stone*, 608 F.3d 939, 945–46

(6th Cir. 2010). The government retains the "burden of persuasion." *Id.* If the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the "judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

*Detention Order*

Judge Atkins determined that, while Williams did rebut the risk of nonappearance, he failed to rebut the presumption of detention as to the danger to the community. In considering the § 3142(g) factors, Judge Atkins found that Williams' drug conspiracy charges, carrying the possibility of no more than twenty years' imprisonment, weighed in favor of detention. Next, Judge Atkins relied on Detective Metzger's testimony as to the nature of the conspiracy to conclude that the evidence in Williams' case as it pertains to dangerousness merits detention. Judge Atkins also noted that Williams' health, while undoubtedly serious, could be adequately treated while in detention. And, given that Williams participated in the alleged conspiracy while at home in southeastern Kentucky, Judge Atkins found that home incarceration would not prevent Williams from resuming drug activities. Further, Judge Atkins did note that Williams' need for medical treatment and his strong family ties as weighing in favor of release. But Judge Atkins determined that the latter of these factors worked to rebut Williams' flight risk, not his danger to the community, and the former was not enough to rebut the presumption of danger to the community. And lastly, Judge Atkins emphasized the serious nature of Williams' drug offense. For these reasons, Magistrate Judge Atkins concluded that no condition or combination of conditions could adequately or reasonably assure against danger to the community in this case.

*De Novo Review*

As an initial matter, the Court finds that an additional hearing is not necessary. Because medical evidence has been filed, there is no longer any evidence that has not already been presented or filed in the record.

Williams is charged with conspiracy to distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846. This is a presumption case pursuant to the Bail Reform Act, 18 U.S.C. § 3142(e)(3)(A). The United States has conceded that Williams had overcome the burden of production as to his risk of flight, and Judge Atkins found Williams had rebutted this presumption. (DE 29, at 6). Therefore, the only issue remaining is whether there are no

5

conditions or combination of conditions, aside from detention, that could be imposed that would assure the safety of the community.

The Court has reviewed the entire record in this matter, including the Pre-trial Services Report (Bond Report) prepared by the United States Probation Office, an audio recording of the first detention hearing, the magistrate judge's detention order, Williams' motion seeking reconsideration, numerous letters filed in the record, and Williams' medical records. The Court has also received additional information concerning Williams' medical condition from the United States Probation Office. The Court agrees with Judge Atkins' conclusion and finds that the United States has shown with clear and convincing evidence that the safety of the community cannot be reasonably assured if Goodwin is released.

First, the nature and circumstances of the charge favor detention. The charges against Williams allege that he organized and led a conspiracy to bring Oxycodone, a Schedule II narcotic, from Virginia to Kentucky. The factual allegations suggest Williams to be a leader of the effort, not just a low level member of the conspiracy. The circumstances of this crime militate against releasing Williams to home incarceration.

The "weight of evidence" as it relates to dangerousness is particularly heavy here. *See Stone*, 608 F.3d at 948 (stating that § 3142(g)(2) "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt"). Detective Metzger presented unrefuted testimony at the detention hearing that Williams orchestrated in effort to purchase Oxycodone in Virginia for the purposes of reselling the drug to residents of the Commonwealth. Even more relevant to the matter, as Judge Atkins noted, "the belief that that the underlying trafficking activity took place while [Williams] remained at his residence" was not refuted either. (DE 29, at 7). A strong case as to the underlying conduct logically impacts how the Court must view the weight of the evidence as it relates to dangerousness. With this testimony, there is not only evidence that Williams oversaw this alleged conspiracy, but also that he allegedly did so from the confines of his residence. Thus, the Court finds that the "weight of the evidence," particularly the allegations that Williams committed this alleged crime from his home, to favor pre-trial detention. Home incarceration would seem to be to provide little safety for members of the community given that Williams has requested to return to the same place to await trial out of which he allegedly ran a drug conspiracy.

Williams' second motion mentions that accommodations could be arranged for him to stay at his father's house instead of the residence where the alleged activity took place. (DE 42, at 3). The Court sees little difference in where Williams stays as it relates to protecting

the public from the danger Williams' release presents. *Where* he stays is not so much the relevant issue pertaining to community safety; it is *that* he would be out of detention with conceivably nothing but his father to prevent him from resuming these alleged activities that makes the Court weary of releasing him. This concern is bolstered by the fact that moving in with his father would not take him out of the community in which he allegedly committed this crime.

Little need be said about the nature and seriousness of the danger posed if Williams were released. As Judge Atkins described, the scourge that is the opiate epidemic "is well documented and cannot be overstated." (DE 29, at 8). The very serious nature of the crime, coupled with the fact that all of these allegations occurred while Williams was on probation for a separate federal offense, make the danger Williams presents to the community all the more real. Allowing Williams to await trial on home incarceration does nothing to stop him from picking back up where he left off, and, more pertinently, detention is the only way to fully ensure the safety of the community.

The third factor is a closer call. Williams does have strong family support, as evidenced by the letters sent to Judge Atkins. He also has no real history of substance abuse. But the relevance this history is not particularly germane to rebut the presumption of danger to others. Most relevant is that Williams did turn himself in to police and did willingly meet with police during the investigation. These are the strongest facts Williams has in support of home incarceration

Williams also has severe health issues as shown by his medical history. Williams struggles with his breathing and has spent several days in the hospital since his original detention hearing. The Court does not doubt Williams' earnestness in his need to seek medical assistance, and it is cognizant of the burdens detention may cause. But this concern has its limits in the overall calculus of determining whether the safety of the community can be reasonably assured if he is released. Williams' medical records show that his medical conditions existed before he participated in this alleged conspiracy. And, as stated above, unrefuted testimony shows that Williams played his role in the conspiracy in large part from his residence in southeastern Kentucky. Thus, even with his medical conditions, the alleged conduct behind the charge against Williams undermines the Court's belief that releasing him on home incarceration with provide the assurance of safety to the community and others.

Williams attempts to downplay the potential danger to the community by arguing that there are no allegations that he continued to participate in this alleged conspiracy after

July 12, 2016. "Since it is now some five months after the Government believes Defendant engaged in any drug trafficking," Williams argues, "it is inconsistent to also state the Government fears that the Defendant will continue in drug trafficking if released." (DE 32, at 2). This theory, however, could apply to any criminal defendant charged with a crime. To carry any sort of the weight, Williams must show why it is true is this case.

Nothing in the record suggests that the Court should trust Williams not to be a danger just because the allegations do not tie him to criminal activity after July 2016. After all, "[t]he risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *McGowan*, No. 5:13-123-KKC, 2013 WL 5743912, at *1 (citing *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir.1989)) (internal citations omitted). That risk, coupled with the fact that Williams allegedly committed this criminal conspiracy while serving a federal sentence of probation for a tax evasion conviction, shows that there is nothing inconsistent with fearing for the safety of the community, as the circumstances in this case give rise for serious concern. Therefore, considering his conduct in the face of a sentence of probation, the Court finds that there are no conditions or combination of conditions that will prevent Williams from engaging in further drug trafficking if released.

## CONCLUSION

This Court has reviewed the pre-trial detention order of the magistrate judge pursuant to 18 U.S.C. § 3145. Having conducted a *de novo* review of the record, the Court finds the evidence presented insufficient to rebut the presumption of detention in the face of clear and compelling evidence that Williams is a danger to the community. Therefore, the magistrate judge's detention order was proper. Accordingly,

**IT IS ORDERED** that the defendant's motions to reconsider his pre-trial detention (DE 32; 42) are **DENIED**.

Dated January 13, 2017.

Karen K. Caldwell
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY